(No. 13414.—Reversed and remanded.)
FRIDA PEARSON, Appellee, *vs.* ELMER A. JOHNSON *et al.*—
(FRANK STEVENSON *et al.* Appellants.)

*Opinion filed April 21, 1921.*

1. CONTRACTS—*husband's secret agreement to secure his own debt as part consideration for sale of wife's property does not bind her.* Where a husband and wife have entered into a written contract for the sale of the wife's property, a secret parol agreement between the husband and the vendee that the note and trust deed for the purchase money shall be turned over to his creditor gives no rights to the vendee or the creditor, who are both charged with notice that the property belongs to the wife, although the parol agreement was a part of the moving consideration to the vendee for making the purchase.

2. DEEDS—*when delivery of deed by agent without receipt of consideration is binding on grantor.* An agent who is directed to deliver a deed only upon receipt of the consideration can make no valid delivery without receipt of the consideration, but where a husband acts for his wife in negotiating the sale of her property, and without any instructions as to receipt of the consideration delivers the deed to a third party, who delivers it to the grantee upon the assurance of the husband that the grantee is good for the consideration, the title passes to the grantee.

3. SAME—*when successor to grantee is entitled to charge improvements against unpaid part of the consideration.* A wife who, with her husband, makes a conveyance of her property is entitled to a note and mortgage for a part of the purchase price, which without her consent was turned over to her husband's creditor; but where the contract for the conveyance requires the grantors to make certain improvements on the property, the creditor, who has succeeded to the rights of the grantee, is entitled to make said improvements upon the failure of the grantors to make them and may set off their cost against the note and mortgage.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

ROBERT W. DUNN, for appellants.

DANIEL ANDERSON, for appellee.

297—27

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On October 4, 1917, Frida Pearson, appellee, filed a bill·in the superior court of Cook county against Elmer A. Johnson and his wife, Marie Johnson, and Frank Stevenson, to enforce an equitable lien against a certain lot described as lot 7₀ in Auburn Gardens, in Cook county, in the sum of $1300 and interest. On January 20, 1919, after a partial hearing, appellee filed. an amended bill, and still later, on October 10, 1919, her second amended bill against the same parties aforesaid, and made the Commercial Sash and Door Company also a party defendant, in which she prayed that a certain contract dated June 29, 1916, entered. into by ·herself and her husband, Ernest Pearson, and Elmer A. Johnson and Marie Johnson, by which she and her husband agreed to convey to the Johnsons said real estate, and also a certain warranty deed of the same date signed by herself and her husband conveying said real estate to the Johnsons, and also a certain quit-claim deed afterwards made by Elmer A. Johnson and his wife to Frank. Stevenson for the use of the Commercial Sash and Door Company, be all declared void and of no effect and the record of said deeds be canceled as clouds upon her title; that she be declared the sole owner of the same; that the decree of the court should further provide that all rents collected on the premises by the defendants, or any of them, since June 29, 1916, be paid to her, and for such other and further relief as equity might require. The defendants all answered. Final decree was entered on a hearing by the court on February 21, 1920, in which the. court found the allegations in the second amended bill were substantially true as therein stated, except as to the allegations of fraud, the court expressly finding that none of the defendants were guilty of any fraudulent conduct in regard to the transactions between the parties. The court decreed that the premises were the property of the appellee, and

that she was entitled to an accounting of all rents, issues and profits received by the defendants therefrom, and of all disbursements made by them in connection with the management of the premises and the completion of the building in accordance with appellee's contract made with the Johnsons. The court also decreed that the defendant the Commercial Sash and Door Company is entitled to an equitable lien for all sums expended in improving the premises and in keeping the same in repair, and for all sums paid out on account of taxes and other matters agreed by appellee in her contract to be paid by her, less all sums received as rent by the company from the said property. On the accounting the court further found and decreed that appellee was entitled to a re-conveyance of the property to her upon the payment to the Commercial Sash and Door Company (hereinafter referred to as the door company) of $799.92 and interest from date of decree. Appellee is given by the decree forty days in which to pay said sum and interest, and in default thereof the premises are to be sold by the master in chancery to pay the same. Upon payment of said sum and interest it is further ordered that Stevenson re-convey the property to appellee, and on refusal and failure so to do the master in chancery is ordered to make a deed to her upon payment or tender by her of the sum of $799.92 to the door company, with interest thereon. Frank Stevenson and the door company have appealed to this court.

The facts material to a decision of the case are as follows: In May, 1916, Ernest Pearson, husband of appellee, was a carpenter and builder operating in Chicago. He had been buying millwork for about a year and a half from the door company. On that date he owed the door company $2793.75 for millwork on buildings that he and his partner, Frank Noren, had built on property other than the property in question. The door company furnished the millwork to Pearson and charged the same to him without

knowledge that Noren was his partner in the building contracts. Pearson was in financial difficulties. He gave the door company two checks in payment of said account,—one for $851, dated May 13, 1916, the other for $1000, dated May 17, 1916,—which had been returned by the bank and marked, "Not sufficient funds." Elmer A. Johnson, a defendant in the lower court, was a salesman and collector for the door company and was constantly pressing Pearson for payment of said account. On one of his trips to see Pearson, Johnson incidentally mentioned to Pearson that he would like to buy a small bungalow for a home, and Pearson said he would try to find one for him. Later, when Johnson was pressing Pearson for payment of the door company account, Pearson suggested to him that he had a bungalow that the door company might as well take as security on the account, as some of his creditors would probably get it anyway. The bungalow was then only partially completed by Pearson on the lot in question, and Johnson finally agreed with Pearson to buy the same at a price of $4000, and to pay for it by assuming $2700 secured by a trust deed and note to the Chicago Title and Trust Company and by giving a $1300 purchase money note and mortgage for the remainder, provided Pearson would turn over the $1300 note and mortgage to the door company on account of his debt to it and would also complete the building and pay up all other liens, taxes and assessments on the property. Pearson assented to this, Johnson at that time believing the property was Pearson's and that the title thereto was in his name. Thereupon Johnson and Pearson went to the office of the door company and Pearson there agreed with Nicholson, its manager, that he would turn over to the door company on his debt the $1300 note and trust deed or mortgage to be given by Johnson and his wife on the purchase of the property. This agreement was not put in writing but it is clearly proven by the testimony of Johnson and Nicholson, and also by the

testimony of Arthur V. Brown in corroboration. Brown positively testified that he told Pearson that the indebtedness to the door company must be taken care of in some way, and in that conversation, or in some other conversation before the delivery of the deed by the Pearsons to the Johnsons, Pearson stated that those payments of Johnson on the property in question should be applied on the door company's indebtedness and agreed that the door company should hold the trust deed and note as security for its claim against him.

After Pearson had made this agreement with manager Nicholson, Johnson went to Brown, who was assistant attorney for the door company, and retained him to look after the matter of drawing up the contract for the purchase and sale of the property in question between him and Pearson. The contract as drawn up by Brown describes the property to be conveyed and recites that a certain bungalow was in process of being built on the property. It further recites that in consideration of the Johnsons purchasing the property the Pearsons agreed to pay all back taxes and special assessments, curbing, paving, water and sewerage taxes and assessments up to and including June 29, 1916, and all interest on any incumbrances up to and including June 29, 1916, and all other incumbrances except the $2700 trust deed to the Chicago Title and Trust Company dated February 19, 1916, and the $1300 mortgage to be signed by the Johnsons. The contract further provides that the Pearsons agree to deliver the property free from all lien claims; to turn over all guaranties from the contractors; to furnish, fit and put up screens for all windows and doors; to make all adjustments for a period of six months on all windows, doors and floors; to furnish all necessary gas and electric fixtures, wiring, piping, gas ranges, laundry and kitchen sinks, all plumbing and plumbing fixtures complete, all of the gas, electric and plumbing fixtures to be of the same quality and fineness as those in-

stalled in the house located on the adjoining premises to the north; to pay for and install all necessary water and sewerage piping, and to build a fence along the walk which runs from the rear of the house to the alley and thence across the rear of the lot. The foregoing contract was signed in duplicate by the parties, each party holding one of the duplicates. After the signing of the contract of sale, and in pursuance thereof, Pearson and wife executed a warranty deed on the same day the contract was signed; deeding the property to Johnson and wife. After appellee signed the deed, Ernest A. Hoerich, who was to be named as trustee in the trust deed to be signed by the Johnsons to secure the $1300 payment, in company with Pearson, gave the deed to Brown, the attorney acting for Johnson and the door company. Brown showed them the note and trust deed for $1300 to be signed by the Johnsons and which had not then been signed by them. Hoerich was not disposed to deliver the deed to Brown until the note and trust deed had been executed by the Johnsons and delivered to him, but on being assured by Pearson that Johnson was all right he delivered the deed to Brown for Johnson. Brown held the deed until Johnson and his wife had signed and returned the note and trust deed to him. He then recorded the warranty deed for Johnson and turned over the note and trust deed to the door company in pursuance of Pearson's agreement with the company. Hoerich later called on Brown for the note and trust deed and was informed of their delivery to the door company. To evidence the terms upon which the door company received the note and trust deed, Brown procured for Pearson from the door company its written agreement to turn back to Pearson the note and trust deed at any time upon payment by Pearson of his debt of $2793.75.

At the same time that Pearson made the agreement with the door company he also turned over to it $1200 of other securities, which were subsequently collected by

the door company. The total securities thus turned over to the door company almost equaled. Pearson's debt, and by giving these securities he saved himself from having liens enforced on the other buildings for which the millwork was furnished, and the record shows that the door company lost its liens by relying on those securities. The $1300 note signed by the Johnsons was payable in installments of $30 per month, beginning with July 1, 1916, except the final payment of $250, which was to be made on June 1, 1919. Johnson was anxious to have Pearson complete the building he had purchased from him, as he was paying rent where he then lived and was financially unable to pay more than the $30 per month required by the note he had signed. Neither of the Pearsons made any effort whatever to complete the building or to make any of the payments for taxes, special assessments or other liens which they had agreed to pay by the terms of their contract, although Johnson often requested them to do so so that he could move into the premises, and was as often put off by Pearson by various frivolous excuses. Johnson finally informed Pearson that unless he completed the building and otherwise performed his contract so that he could move into the premises he would have to deed them to the door company, as he was unable to make those expenditures himself.

In the latter part of November, 1916, appellee called Johnson on the telephone and demanded of him that he deliver to her the trust deed and note. This was the first information Johnson had that she claimed the property as hers and that she was entitled to have the note and trust deed. According to her testimony Johnson replied to her, "When you finish the bungalow and say everything is. in order I will sign the note for you and not before." She replied to him, "I can't do any more work now, when I have nothing to show." On December 7, 1916, Johnson received notice from appellee's attorney stating to him in substance that although appellee and her husband had per-

formed their contract, he (Johnson) had failed and refused to perform his, and demanding to know when he would execute the note and trust deed which he had agreed by his contract to execute and deliver to her. Johnson also received another notice from appellee's attorney of similar import, informing him that appellee would not convey to the door company or consent for it to have any interest in the premises without being compensated therefor. Various other communications passed between appellee's attorney and the door company and Johnson with the view of settling the matter amicably, but no satisfactory agreement could be made. On January 27, 1917, Johnson quit-claimed the property to Frank Stevenson for the use of the door company, as aforesaid. The door company then finished the building, paid off other liens agreed to be paid by the Pearsons and repaired the damages caused by freezing of some of the unprotected pipes.

The evidence on the part of appellee clearly shows that she is the fee owner of the property by virtue of a warranty deed made to her by Carl Westin and wife for the consideration of $500. She has paid $100 of her own money on the lot and owes the remainder to Westin, and she states in her testimony that she and Westin are in a lawsuit about the remainder of the unpaid purchase money. According to the undisputed testimony of appellee and her husband she authorized him to sell the property to the Johnsons for her upon the written terms already mentioned, and she signed the written contract to make the conveyance without any knowledge of her husband's promise to the door company that the $1300 note was to be given to secure her husband's debt. She made frequent inquiries and demands of her husband for the note and trust deed, and only learned of the door company's claim after she made her demand upon Johnson for the note and trust deed. Her husband testified that he did not inform her about his arrangement with the door company regarding these securi-

ties, which he testified belonged to his wife, and gives as an excuse for not doing so that she was in a delicate condition of health and for that reason he did not dare tell her. He testified that he did not agree with Johnson and the door company, previous to the making of the contract and warranty deed to the property in question, to put up the note and trust deed as security for his debt, but testified that his agreement to do so was after the making of the contract and conveyance. We are satisfied, however, that his testimony is unreliable on this point and that the facts on this proposition are as claimed by appellants and as testified to by their witnesses.

Appellee having made clear and undisputed proof that she was the owner of the premises and that her husband was not authorized to make any other contract than the written contract entered into with the Johnsons, we must hold that she was only bound by her written contract. According to the evidence for appellants the oral agreement of Ernest Pearson with Johnson to sell the premises to him for $4000 net, to accept from him the note and trust deed in payment thereof, to deed the property subject to the $2700 incumbrance and to deliver the $1300 note and trust deed to the door company as security for his debt to the company, constituted one entire agreement. The delivery of the note and trust deed to the door company formed a part of the moving consideration to Johnson for making the purchase. The Johnsons cannot enforce this entire contract with appellee, because the entire contract was not embodied in the written contract with her and her husband. The door company is in no better position, as grantee of Johnson, to enforce this contract with appellee. Pearson's agreement with the door company to turn over to it the $1300 note as security for his debt to it was made in pursuance of his agreement with Johnson, and while that agreement may be termed a separate agreement with the door company and binding on Pearson, it was not bind-

ing on appellee because made without her authority or con-
sent. At the time this agreement with the door company
was made it had no notice or knowledge that appellee was
the sole owner of the property. The door company is,
however, charged with notice that it was her separate
property before the contract was consummated and the con-
tract and deed of the Pearsons were delivered to John-
son. The attorney, Brown, who handled the transaction
both for Johnson and the door company, obtained knowl-
edge that appellee was the sole owner of this property, as
Brown learned from the record that the title to the prem-
ises was in her name and before any of the instruments
were delivered. For the same reason Johnson is charge-
able with notice of appellee's rights in the premises.

Appellee has assigned cross-errors, by which she insists
that the court erred in decreeing to the door company a
lien on the premises for completing the building and re-
moving the various incumbrances that she and her husband
had by their written contract agreed to remove. Her claim
is, in substance, that the door company without right, as a
mere volunteer, completed the building and removed the
several incumbrances, and therefore has no lien in equity
for such outlays. She also insists that there was no valid
and binding delivery of the warranty deed to Johnson be-
cause the same was delivered without her authority, as her
agent was only authorized to deliver it after the $1300
note and trust deed had been delivered to him for her.
Her position is based upon the familiar legal doctrine that
where an agent is directed by the grantor in a deed to de-
liver it only upon receipt of the consideration therefor the
delivery of the deed to the grantee without receipt of the
consideration is not a valid delivery, and that delivery of
a deed under such circumstances may be avoided, as no
title passed to the grantee. (*Berry* v. *Anderson,* 22 Ind.
37.) The record in this case does not anywhere show that
the deed in question was to be delivered to Johnson only

upon the delivery to appellee's agent of the note and trust deed for the consideration. It was delivered to Johnson by the direction of appellee's husband, who negotiated the deal for appellee. Hoerich, who had the deed, does not make any claim that he had such instructions from appellee as to the delivery of the deed and she makes no such claim in her testimony. Hoerich's testimony, in substance, is that he delivered the deed with the implied understanding that Johnson would later deliver the note and trust deed, which amounts to a declaration that the deed was delivered with the understanding that the grantee would later deliver the note and trust deed. The title therefore passed to Johnson, but appellee has a right to insist upon the consideration being delivered,—that is, the note and trust deed. When the Johnsons conveyed by quit-claim deed the property to Stevenson for the use of the door company the title passed to Stevenson for such use, and Stevenson or the door company had the right to complete the building and remove the incumbrances that the Pearsons were obliged to remove and to set off their claim for such expenditures against the claim of appellee on the $1300 note.

The court found that none of the defendants were guilty of any fraud or conspiracy to deprive appellee of any of her legal rights in the premises. We are satisfied from the evidence that this finding of the court was warranted. Appellants' actions and dealings with Ernest Pearson were all in good faith and in the honest belief that he had complete right or authority to deal with this property as he had agreed with them to do. They have failed to prove that appellee authorized her husband's contract with the door company, but it is clearly proved that neither of the Pearsons ever complied or attempted to comply with their written contract to complete the building and remove the incumbrances they were obligated to remove. According to appellee's own evidence, the $2700 borrowed by her

to improve her property was ample to complete it according to her and her husband's contract with the Johnsons. By her bill she is asking a court of equity to allow her to retain all of the unexpended money borrowed by her to complete the bungalow and to compel the appellants to reconvey to her the property free and clear of any claim of appellants or expenditures made by them in the building and which expenditures she had obligated herself to make. Her demands are very inequitable. He who seeks equity must do equity is a well known maxim. She and her husband were the first violaters of the written contract, and the equitable solution of the issues submitted for decision is, that she and the Johnsons, or appellants as the grantees of the Johnsons, should be held and bound by the terms of the written contract. It was the clear intention of the parties by the written contract that the Johnsons were to be deeded the property at a net price of $4000 and that all incumbrances against it should be removed in the way of taxes, special assessments or other incumbrances on the building and that appellee and her husband would complete the building according to their written contract. By taxes and special assessments we mean such taxes and special assessments as were due and unpaid on the day of the written contract. By the delivery of the deed to the Johnsons under the written contract appellee and her husband vested the title to the property in question in the Johnsons, subject to $2700 of the incumbrance mentioned in the trust deed to the Chicago Title and Trust Company, and subject also to the $1300 note and trust deed which were to be given to the appellee and which rightfully belong to her. Stevenson, for the door company, succeeded to the rights of Johnson as his grantee. Appellee is only entitled to a lien on the premises in question for the amount due her on the $1300 note and mortgage after proper deductions have been made for the completion of the building according to the terms of the written contract and for outlays in

removing the incumbrances agreed to be removed by her and her husband. The decree of the court should have been in accordance with the above conclusions.

The evidence in the record is not sufficient to enable this court to enter a final decree for the reason that it is not shown with sufficient certainty that all of the incumbrances have been removed that appellee agreed to remove by her contract and that the building has been completed in every particular according to the contract, and the briefs and arguments of counsel do not clear up this matter as very little attention was paid to it by them. Whatever amount is justly due to appellants by reason of these outlays should be applied on the note as a credit or payment and as of the date that the expenditures were made. Appellants are entitled to have a credit indorsed on the note of the amount of the interest on the $2700 building loan from the date of the note to the Chicago Title and Trust Company, February 19, 1916, to June 29, 1916, so that the consideration or amount paid on the property in question will only be $4000 net, as intended by the parties. Appellants are not entitled to any credit on the note for damage by freezing of pipes, as indicated by the exhibits to their answer, unless the failure of appellee and her husband to comply with their contract was the direct or proximate cause of such damage. All other items of credit by reason of appellants' expenditures on the building are to be according to the terms of the written contract, which the court may ascertain on a rehearing of the cause.

For the reasons aforesaid the decree of the superior court is reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*